UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TRUSTEES OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, et al.,

                No. 22-CV-2129-LTS

            Petitioners,

   -against-

DREAMWORKS CONTRACTING LLC,

           Respondent.
-------------------------------------------------------x

## MEMORANDUM ORDER

Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; the Trustees of the New York City Carpenters Relief and Charity Fund; the Carpenter Contractor Alliance of Metropolitan New York (collectively, the "Funds"); and the New York City District Council of Carpenters (the "Union" and, together with the Funds, the "Petitioners") request that the Court confirm an arbitration award obtained against Dreamworks Contracting LLC ("Respondent") pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. section 185. (Docket entry no. 1 (the "Petition").) Petitioners also seek post-judgment interest and an award of the attorneys' fees and costs associated with the Petition. The Court has jurisdiction of this matter pursuant to 29 U.S.C. section 185 and 28 U.S.C. section 1331. For the reasons set forth below, the Petition is granted.

## BACKGROUND

Petitioners initiated this action on March 15, 2022. Respondent did not enter an appearance or file opposition to the Petition, and the case was reassigned to the undersigned on November 8, 2023. The Court subsequently entered an order for supplemental briefing

concerning Respondent's intent to be bound to the relevant collective bargaining agreement ("CBA") following the period specified therein, such that the CBA's arbitration clause governed the instant dispute. (Docket entry no. 13.) Petitioners filed supplemental briefing on April 25, 2024 (see docket entry nos. 15-17), which was served on but unanswered by Respondent.

The Petition is now fully briefed. Because Respondent has failed to appear in this action or respond to the Petition or Petitioners' supplemental briefing, the facts relevant to the Court's decision are undisputed, and are taken from both such filings.

On or about February 28, 2017, Respondent executed an Administration Form with the Union. (Petition ¶ 9 (citing docket entry no. 1-1).) Respondent thereafter executed a collective bargaining agreement with the Union covering the retroactive period of July 1, 2011, through May 31, 2017. (Petition ¶ 10; Docket entry no. 1-2 (the "2011-2017 CBA").) The 2011-2017 CBA, executed on or about March 16, 2018, operated as the applicable CBA until a successor agreement was adopted on or about June 1, 2021 (the "2017-2027 CBA").[1] (Docket entry no. 15 ("Davidian Decl.") ¶¶ 5-7.)

Pursuant to the 2011-2017 CBA, Respondent was required to make contributions to the Funds for employees covered by the agreement and employed within the "jurisdictional territory" of the Union. (2011-2017 CBA, Art. XII § 1.) All remittances were to be made through the Union's "I-Remit" system. (Id.) Respondent was also required to make its books and records available to the Funds when requested to allow for an "audit to ensure compliance" with its obligations to make the required Fund contributions. (Petition ¶ 15; 2011-2017 CBA, Art. XII § 9.) Audit and collection procedures were set forth in more detail in the Funds'

---

[1] The copy of the 2021-2027 CBA provided by Petitioners was unexecuted. (Docket entry no. 15-1.)

Revised Statement of Policy for Collection of Employer Contributions.  (See docket entry no. 1-4 (the "Collection Policy"); Petition ¶ 17.)

Following the lapse of the 2011-2017 CBA, Respondent continued to remit and report contributions to the Funds between 2018 and 2019 in accordance with the 2011-2017 CBA and updated rate sheets.  (Davidian Decl. ¶¶ 7-8; docket entry no. 1-3 ("2018-2019 Remittance Report").)  Respondent made such remittances and reports through the electronic I-Remit system.  (Davidian Decl. ¶ 9.)

When reporting hours through the I-Remit system, employers were required to consent to the Terms of Use, which stated in relevant part:

> A Contractor's obligation to contribute to the Fringe Benefit Funds is governed by the Agreements and Declarations of Trust ("Trust Agreements") establishing the Fringe Benefit Funds.  The amount of and timing requirements for Contributions are governed by the Collective Bargaining Agreement . . . to which the Contractor is a signatory, and/or the Statement of Policy for Collection of Contractor Contributions ("Collections Policy") that is in effect during the period to which Contributions are attributable.

(Id.; see also docket entry no. 15-3 ("I-Remit Terms of Use").)  The Terms of Use also contained a certification to which the employer was required to assent, which stipulated that:

> [T]he Contractor agrees to be bound by the Trust Agreements and all rules and regulations promulgated by the Trustees including the Collection Policy.  In the event of a discrepancy between the Data, and the applicable CBA and/or Collections Policy and the Trust Agreements, the CBA and/or Collections Policy will govern.  The Contractor hereby certifies that the hours and information provided by the Contractor . . . are true, complete and in full compliance and conformity with all provisions of the applicable CBA and/or Collections Policy.

(Davidian Decl. ¶ 10; see also I-Remit Terms of Use.)

Petitioners sought to exercise their authority to perform an audit of Respondent's books and records for the period of "June 6, 2018 through the present"[2] (Petition ¶ 24), making a request with which Respondent initially complied, but eventually refused following a dispute between the parties. (Id. ¶ 25-26; see also docket entry no. 16 ("Grancio Decl.").) The Funds thereafter conducted an estimated audit, which concluded that Respondent failed to remit contributions to the Funds in the estimated principal amount of $1,194,038.46. (Petition ¶ 26.)

Pursuant to the 2011-2017 CBA's arbitration clause, Petitioners initiated arbitration proceedings. (Id. ¶ 27.) An arbitration hearing was held on July 14, 2021, at which time the arbitrator found that Respondent violated the 2011-2017 CBA by failing to permit the Funds to conduct an audit as contemplated by the CBA and the Collection Policy, and was liable for the sum of $1,547,742.25, consisting of: (i) the estimated principal deficiency of $1,194,038.46, (ii) interest thereon of $111,996.10, (iii) liquidated damages of $238,807.69, (iv) court costs of $400, (v) attorneys' fees of $1,500, and (vi) an arbitrator's fee of $1,000. (Petition ¶¶ 28-29; docket entry no. 1-7 ("Arbitration Award" or "Award") at 3-4.) Respondent was also found liable for pre-judgment interest on the Award at an annual rate of 5.25%, to accrue from the date of issuance. (Arbitration Award at 4.) As Respondent failed to appear for the hearing, the Award was issued in default. (See id.)

Petitioners thereafter filed the instant Petition to confirm the Award, requesting that the Court enter judgment in the amount of $1,547,742.25, plus pre-judgment interest on that amount to accrue at the annual rate of 5.25% from the date of the Award through the date of entry of judgment, along with post-judgment interest and an award of attorneys' fees and costs

---

[2]   None of Petitioner's filings specify the end date of the audit period at issue.

associated with the Petition. As of the date of the Petition, Respondent had filed to pay any portion of the Award. (Petition ¶ 31.)

## DISCUSSION

"Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions to confirm labor arbitration awards." Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Empire Masonry, LLC, No. 19-CV-1233-VEC, 2019 WL 11270457, at *1 (S.D.N.Y. June 5, 2019) (citing Local 208, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir. 1998)). A court's review of an arbitration award under the LMRA is "very limited." Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 536 (2d Cir. 2016). The Court is "not authorized to review the arbitrator's decision on the merits," but rather must "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." Id.

Because Respondent has failed to appear in this action and respond to this Petition, the Court regards the Petition as an unopposed motion for summary judgment. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although Respondent has chosen "the perilous path of failing to submit a response" to the Petition, the Court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted). If the evidence submitted in support of the Petition "does not meet the movant's burden of production, then

summary judgment must be denied <u>even if no opposing evidentiary matter is presented</u>." <u>D.H. Blair</u>, 462 F.3d at 109-10 (emphasis in original) (citation omitted).

<u>Confirmation of the Arbitration Award</u>

The Court finds that summary judgment is warranted based on Petitioners' submissions in this action.

A threshold issue for the Court was whether Respondent intended to be bound to the 2011-2017 CBA following the period specified therein, such that the CBA's arbitration clause governed the instant dispute. Ordinarily, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[.]" <u>Seneca Nation of Indians v. New York</u>, 988 F.3d 618, 625 (2d Cir. 2021) (citation omitted). However, "[a]rbitration is a creature of contract; a party therefore cannot be required to submit to arbitration any dispute which it has not agreed to submit." <u>Doe v. Trump Corp.</u>, 6 F.4th 400, 412 (2d Cir. 2021) (citation omitted). The question of whether an arbitration agreement was ever concluded or whether the parties are "bound by a given arbitration clause" is generally an issue for judicial determination. <u>See, e.g.</u>, <u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."); <u>Granite Rock v. Int'l Bhd. of Teamsters</u>, 561 U.S. 287, 296-97 (2010) (gathering cases for the proposition that, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide").

Petitioners have proffered undisputed evidence of Respondent's intent to be bound to the 2011-2017 CBA, including its arbitration clause. As discussed in the preceding section, Petitioners' filings demonstrate that: (1) Respondent continuously reported and remitted contributions to the Funds for the period of 2018-2019 (Davidian Decl. ¶ 8; 2018-2019

Remittance Report); (2) In order to submit such remittances and reports through the I-Remit system, Respondent was required to acknowledge that its contributions were "governed by the Collective Bargaining Agreement . . . to which the Contractor is a signatory, and/or the . . . 'Collections Policy' . . . that is in effect during the period to which [c]ontributions are attributable" and to stipulate that "the Contractor agrees to be bound by the Trust Agreements and all rules and regulations promulgated by the Trustees, including the Collection Policy" (Davidian Decl. ¶¶ 9-10; I-Remit Terms of Use); and (3) Respondent initially acceded to the audit, which was initiated pursuant to the 2011-2017 CBA and Collection Policy.  (See Davidian Decl. ¶ 11; docket entry no. 15-4 ("Exhibit 4"); Grancio Decl. ¶¶ 2-5.)

Courts have generally found these facts sufficient to establish an intent to be bound to a CBA following the formal expiration of the Agreement.  See, e.g., Brown v. C. Volante Corp., No. 95-CV-1406-NG, 1997 WL 441799, at *3 (E.D.N.Y. July 30, 1997) (noting, inter alia, that the employer "acceded without challenge" to request for an audit, acknowledged in writing "a responsibility to the funds," which the employer offered to settle, submitted remittance reports for 61 consecutive months, and paid all employees union scale), aff'd, 194 F.3d 351 (2d Cir. 1999); Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs. Corp., No. 12-CV-3940-DLI-RML, 2015 WL 1443038, at *5-7 (E.D.N.Y. Mar. 27, 2015) (gathering case law).  The Court likewise finds that the sum of Respondent's conduct demonstrates an intent to be bound to the 2011-2017 CBA for the relevant audit period.

Turning then to the governing 2011-2017 CBA, Article XII section 14 sets forth an arbitration clause allowing any contractual party to seek arbitration of any dispute or disagreement "concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due[.]"  Thus, the parties' dispute concerning Respondent's alleged

failure to remit required contributions to the Funds (see Petition ¶¶ 24-26) was "plainly within the scope of the CBA's arbitration provision." Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Jessica Rose Enters. Corp., No. 15-CV-9040-RA, 2016 WL 6952345, at *3 (S.D.N.Y. Nov. 28, 2016) (reviewing analogous unopposed petition to confirm arbitration).

Moreover, there is no issue of fact as to whether the arbitrator acted within the scope of his authority. The 2011-2017 CBA stipulated that, in the context of a dispute stemming from "payments to the Fund . . . allegedly due," the "arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to award appropriate damages." (2011-2017 CBA, Art. XII § 9; see also id. (expressly designating Roger E. Maher, Esq., to serve as an impartial arbitrator for purposes of the CBA).) In the Arbitration Award, which Petitioners have proffered, the arbitrator referenced the obligations of Respondent under the 2011-2017 CBA to make "required contributions" to the Funds and to "make its Books & Records, for the aforesaid audit period, available for examination by Funds auditors in order to verify that all required contributions were made[.]" (Arbitration Award at 2.)

Finally, the amount Respondent owes, including pre-judgment interest imposed, is not disputed. Although the end date of the relevant audit period is not specified in the Arbitration Award, the Award explains that the arbitrator received testimony and evidence in support of Petitioner's audit, including a summary report, which estimated the total obligation of Respondent to be $1,547,742.25. (Arbitration Award at 2-3.) There is no evidence to suggest the amount is incorrect, nor that the auditor's accounting methods are not sound. See Landy Michaels Realty Corp. v. Local 32B-32J, Service Emps. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992) ("'[T]here is no general requirement that arbitrators explain the reasons for their award' . . . and . . . an arbitration award should be enforced . . . if there is 'a barely colorable justification

for the outcome reached.'" (citations omitted)); Waterside Ocean Navigant Co. v. Int'l Navigation Ltd., 737 F.2d 150, 154 (2d Cir. 1984) (adopting a "presumption in favor of pre-judgment interest").

Accordingly, the Court finds that Petitioners are entitled to summary judgment on the unopposed Petition, and the Award is confirmed.

Post-Judgment Interest

The Court also grants Petitioners' request for an award of post-judgment interest. Under 28 U.S.C. section 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  An award of post-judgment interest is "mandatory and appl[ies] to actions to confirm arbitration awards." Empire Masonry, 2019 WL 11270457, at *3 (citations omitted). Thus, the Court will order the award of post-judgment interest at the statutory rate from the date on which judgment is entered until payment is made.

Attorneys' Fees and Costs

Petitioners also request an award of the attorneys' fees and costs associated with the Petition.  Although "attorneys' fees and costs are generally not recoverable from an opposing party, courts have used their inherent powers to award them in successful petitions to confirm arbitration awards 'when a challenger refuses to abide by an arbitrator's decision without justification.'" Empire Masonry, 2019 WL 11270457, at *2 (citation omitted); see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Furniture Bus. Sols., LLC, No. 20-CV-02867-GHW, 2020 WL 6525466, at *3-4 (S.D.N.Y. Nov. 5, 2020).

The Court finds that an award of reasonable fees and costs is justified in this case, as Respondent, without any proffered justification, failed to participate in the arbitration proceeding, failed to appear in the matter before this Court, and has not paid any portion of the Arbitration Award.  Moreover, the 2011-2017 CBA and Collection Policy to which Respondent was bound expressly contemplated the recovery of attorneys' fees.  (See 2011-2017 CBA, Art. XII § 8(d) ("In the event that formal proceedings are instituted before a court of competent jurisdiction . . . to collect delinquent contributions to [the] Fund(s) . . . the Employer shall pay to such Fund(s) . . . reasonable attorney's fees and costs of the action."); Collection Policy § V(6) ("Attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts or in enforcing the Board of Trustees' rights to payroll reviews and/or audits." ).

To determine a reasonable fee award, district courts employ "the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate." Furniture Bus. Sols., 2020 WL 6525466, at *3 (citation omitted).  "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'"  Id. (alteration in original) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).  As to the hours reasonably expended, "the critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Flores v. J&B Club House Tavern, Inc., No. 10-CV-4332-GAY, 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (internal quotation marks and citations omitted).

Turning first to the total hours expended, the Court finds that 6.1 billed hours to be reasonable in light of both the time records submitted (docket entry no. 1-8 ("V&A Invoice"))

and similar, contemporaneous cases in this District.  See, e.g., Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Metro Installations Inc., No. 21-CV-4326-PGG, 2023 U.S. Dist. LEXIS 207895, at *8-9 (S.D.N.Y. Nov. 17, 2023) (finding 7 hours to be a reasonable number of hours worked in connection with unopposed petition to confirm arbitration); Furniture Bus. Sols., 2020 WL 6525466, at *5 (same as to 8.4 hours billed).

As to hourly rates, Petitioners billed at rates of $350 per hour for Nicole Marimon, who graduated from law school in 2014, and $275 per hour for Adrianna Grancio and Maura Moosnick, who graduated law school in 2016 and 2021, respectively, for total billings amounting to $1,685 for 6.1 hours of work.³  (Petition ¶¶ 36-38; V&A Invoice.)  The rate billed in connection with the Petition by Ms. Marimon has been considered repeatedly by courts in this District and found to be reasonable in light of her experience and her former position as partner at Virginia & Ambinder, LLP ("V&A"), the firm representing Petitioners in the instant case. See, e.g., Furniture Bus. Sols., 2020 WL 6525466, at *5 ("Ms. Marimon's rate [of $350 per hour] is reasonable given her experience 'as lead counsel for multiemployer employee benefit plans in . . . litigation' and her status as a partner of the firm." (citations omitted)).  The Court agrees, and will therefore award fees for the 0.1 hours billed by Ms. Marimon at the requested rate of $350 per hour, for a total of $35.

As to Ms. Grancio, although it appears that she has recently been made partner at V&A, the Petition was prepared and submitted in February and March of 2022, at which time courts in this district had "usually set her rate at $225 to $250 per hour" considering her

---

³ Although Petitioners assert billing at a rate of $120 per hour for legal assistants in connection with this matter (Petition ¶ 39), the invoice submitted does not reflect the initials of the listed assistants for any of the 6.1 hours billed.  (See generally V&A Invoice.)

experience and position as an associate at the firm. Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Regal U.S.A. Concrete Inc., No. 22-CV-8202-JPC, 2023 WL 8644513, at *6 (S.D.N.Y. Aug. 9, 2023) (citations omitted); see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. CEI Contractors Inc., No. 21-CV-7870-JPC, 2022 WL 3225680, at *5 (S.D.N.Y. Aug. 10, 2022) (gathering cases from 2020-2022 and adjusting Ms. Grancio's rate to $250 per hour). Accordingly, the Court will award fees to Ms. Grancio for her 2.6 hours billed in connection with the Petition at a rate of $250 per hour, for a total of $650.

As to Ms. Moosnick, courts in this District found a billing rate of $275 to be too high in awarding attorneys' fees for contemporaneously filed petitions, deeming the range of $200-$225 to be more appropriate for "an associate with less than two years of experience." See, e.g., Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. James S. Mitchell & Sons, Inc., No. 21-CV-9465-VSB-SLC, 2022 U.S. Dist. LEXIS 103644, at *16 (S.D.N.Y. June 9, 2022) (R. & R.) (gathering cases and recommending award of $200 per hour for unopposed petition filed in November of 2021); Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. Genrus Corp. No. 22-CV-4886-JPC, 2022 WL 3536134, at *5 (S.D.N.Y Aug. 18, 2022) (gathering cases and noting that "several courts have awarded lower fees for more experienced attorneys at Ms. Moosnick's firm," before arriving at rate of $225 per hour for unopposed petition filed in June of 2022). The Court likewise finds a rate of $225 to be more appropriate in light of the "approximately one year of legal experience" Ms. Moosnick possessed at the time the Petition was prepared and filed. Genrus Corp., 2022 WL 3536134 at *5. At 3.4 hours billed, the Court will therefore award $765.

Finally, the Court finds costs in the amount of $77 to be reasonable.  See, e.g., CEI Contractors Inc., 2022 WL 3225680, at *5 (describing $77 in costs as "near a standard cost to bring actions in this District" (citation omitted)).

In short, because Respondent has failed to justify its refusal to abide by the arbitrator's decision, the request for costs in the amount of $77 and an award of reasonable attorneys' fees in the amount of $1,450 is granted.

<u>CONCLUSION</u>

For the reasons discussed above, Petitioners' petition to confirm the July 14, 2021, arbitration award is granted.  The Clerk of Court is respectfully directed to enter judgment awarding Petitioners (1) $1,547,742.25, plus pre-judgment interest thereon, to accrue at an annual rate of 5.25% from July 14, 2021, through the date of judgment; (2) $1,450 in attorneys' fees; and (3) $77 in costs arising out of the petition.  Post-judgment interest will accrue in accordance with 28 U.S.C. section 1961.

Docket entry no. 1 is resolved. The Clerk of Court is further directed to close this case.

SO ORDERED.

Dated: New York, New York
　　　　July 12, 2024

　　　　　　　　　　　　　　　　　　　　　　　/s/ Laura Taylor Swain
　　　　　　　　　　　　　　　　　　　　　　　LAURA TAYLOR SWAIN
　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge